# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Tim George, individually and on behalf
of all others similarly situated,

      Plaintiffs,

  v.

Uponor, Inc., successor to Uponor North
America, Inc., Wirsbo Company, and
Uponor Wirsbo, Inc.,

      Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 12-249 ADM/JJK

_____

Shawn M. Raiter, Esq., Larson King, LLP, St. Paul, MN; Robert K. Shelquist, Esq., Lockridge Grindal Nauen, PLLP, Minneapolis, MN; Shannon J. Carson, Esq., and Lawrence Deutsch, Esq., Berger & Montague, PC, Philadelphia, PA; Charles J. LaDuca, Esq., Cuneo Gilbert & LaDuca, LLP, Washington, DC; and Michael A. McShane, Esq., Audet & Partners, LLP, San Francisco, CA; on behalf of Plaintiff.

John R. Schleiter, Esq., Howard L. Lieber, Esq., and Daniel W. Berglund, Esq., Grotefeld, Hoffmann, Schleiter, Gordon & Ochoa, LLP, Chicago, IL, and Minneapolis, MN, on behalf of Defendants.

Kenneth S. Kasdan, Esq., Michael D. Turner, Esq., and Bryan M. Zuetel, Esq., Kasdan Simonds Weber & Vaughn LLP, Irvine, CA; and Chad R. Felstul, Esq., Pemberton, Sorlie, Rufer & Kershner, PLLP, Fergus Falls, MN, on behalf of Movants Curtis Smith and Tina Smith.
_____

## I. INTRODUCTION

On January 14, 2013, the undersigned United States District Judge heard oral argument on Movants Curtis and Tina Smith's ("the Smiths") Motion to Intervene [Docket No. 33] as well as the Smiths' Motion to Permit Filing of Reply to Opposition to Motion to Intervene [Docket No. 60] ("Motion to Reply").[1] Plaintiff Tim George initiated this putative class action with a

---

[1] After filing their motion to intervene in this action, the Smiths filed a second motion requesting leave to file a reply memorandum, to which they attached their reply memorandum.

complaint against Defendants Uponor, Inc., Wirsbo Company, and Uponor Wirsbo, Inc. (together, "Defendants") seeking recovery for allegedly faulty brass pipe fittings. Compl. [Docket No. 1]. The Smiths move to intervene, arguing the putative class does not adequately represent their interests or the interests of individuals similarly situated to the Smiths. For the reasons set forth below, the Smiths' Motion to Intervene is denied, and the Smiths' Motion to Reply is granted.

## II. BACKGROUND

This putative class action is one of several in the latest wave of litigation relating to plumbing systems made of cross-linked polyethylene (a material known as "Pex"). Many lawsuits have alleged defects and resulting damage from Pex plumbing systems and the brass fittings used in connection with these systems.

In particular, from 2009 to 2012, this Court presided over multi-district litigation (MDL) involving plaintiffs in seven putative class actions. See Order, June 29, 2012, In re: Uponor, Inc., F1807 Plumbing Fittings Products Liability Litig., No. 11-md-2247 ADM/JJK [MDL Docket No. 96].[2] The plaintiffs in that MDL alleged that F1807 standard brass fittings sold by defendant Uponor, Inc. ("Uponor") and another company were defective and had in some cases caused property damage. See id. at 2. The parties ultimately proposed a settlement involving two nationwide settlement classes. See id. at 2-3.

---

District of Minnesota Local Rule 7.1(b)(3) explicitly states that a party filing a non-dispositive motion may not file a reply brief without prior permission from the court. Although the Smiths' late-filed reply violates this district's local rules, the Court grants the motion under the circumstances of this case and only in this particular instance.

[2] For ease of reference, citations to the prior MDL will be referred to as [MDL Docket No.].

Oscar Ortega, a California resident represented by law firm Kasdan Simonds Weber & Vaughn LLP ("Kasdan Simonds"), moved to intervene in the F1807 MDL after the Court preliminarily approved these settlement classes but before the Court granted final approval. See Order, June 19, 2012 [MDL Docket No. 80]. Ortega argued that the settlement classes failed to adequately represent the interests of California residents because the class representatives had not asserted a claim under California's Right of Repair Act (RORA). See id.; see also Cal. Civ. Code § 896 (2013). The Court denied Ortega's motion to intervene, finding the motion untimely, prejudicial to the parties, and unnecessary because the proposed settlement classes sufficiently addressed Ortega's concerns. See generally, Order, June 19, 2012 [MDL Docket No. 80]. On June 29, 2012, the Court approved the final MDL settlement. See Order, June 29 2012 [MDL Docket No. 96].

In the meantime, various other plaintiffs filed separate actions against Uponor and related defendants, this time alleging defects in brass fittings under the F1960 standard. For example, Plaintiff George filed this putative class action in the District of Minnesota on January 31, 2012, alleging design and manufacture defects in the F1960 brass fittings marketed and sold by Defendants. See generally, Compl. Other plaintiffs filed similar actions both before and after George, in districts ranging from California to Pennsylvania. See In re: Uponor, Inc., F1960 Plumbing Fittings Prods. Liability Litig., MDL No. 2393, at 1 (J.P.M.L. Sept. 27, 2012). As of June 2012, at least 19 actions had been filed against Uponor and other defendants, with 12 actions filed in the District of Nevada. See id. at 1, 5-6.

On June 28, 2012, George filed a motion with the Judicial Panel on Multidistrict Litigation (JPML) to centralize the various F1960 actions in the District of Minnesota. The

JPML denied the request, but encouraged the parties to cooperate to "reduce the potential for duplicative discovery and inconsistent pretrial rulings." Id. at 3. Perhaps heeding this suggestion, the plaintiffs in three F1960-related actions sought and received permission to transfer their actions to the District of Minnesota, after which they were assigned to this Court.[3] A fourth group of plaintiffs, in Patel v. Uponor Corp., 12-cv-1882 ADM/JJK, filed their action directly in the District of Minnesota.

Each of the actions before the Court is a putative class action. Plaintiff George brings common law claims on behalf of a national class of homeowners, but also alleges a violation of New Mexico's Unfair Trade Practices Act on behalf of a subclass made of New Mexico homeowners. Compl. ¶¶ 81-82. The plaintiffs in Patel, Shons, and Fofi bring common law and warranty claims on behalf of putative statewide classes for Texas, Oklahoma, and Pennsylvania, respectively. The plaintiffs in Gibbs seek relief on behalf of a class of "Central and Southern" Arizona homeowners, alleging common law and warranty claims as well as violations of the Arizona Consumer Fraud Act.

The Smiths, represented by Kasdan Simonds, now move to intervene by right in the George action. As Ortega did before them, the Smiths argue George's putative nationwide class fails to adequately represent California homeowners affected by the Uponor brass fittings. Namely, the Smiths argue that George has not asserted a claim under RORA. Because RORA forgoes the economic loss doctrine, the Smiths argue they are potentially able to recover

---

[3] Those actions are: Gibbs v. Uponor Corp., 12-cv-2631 ADM/JJK (transferred from Southern District of Illinois), Shons v. Wirsbo, Co., 12-cv-2837 ADM/JJK (transferred the Western District of Oklahoma), and Fofi v. Uponor, Inc., 12-cv-2908 ADM/JJK (transferred from Middle District of Pennsylvania).

damages for simply owning defective parts, regardless of any subsequent damage those alleged defects may have caused.

Nationwide, there are at least three putative class actions asserting RORA claims against Uponor and related defendants on behalf of California homeowners, and each of these actions pertains to F1960 brass fittings. First, Kasdan Simonds represents the plaintiffs in <u>Sweidan v. Wirsbo Co.</u>, No. RIC 10014729 (Cal. Sup. Ct.), a California state court class action. <u>See</u> Turner Decl. ¶¶ 3-4 [Docket No. 39]. Second, on December 4, 2012, a separate group of plaintiffs filed a class action in the Central District of California. <u>See</u> <u>Gasway v. Uponor Corp.</u>, No. CV12-10358 PSG/PLA (C.D. Cal.). Finally, after the oral argument regarding the present motion, Kasdan Simonds filed a third class action on behalf of Gary and Elsa Overstreet ("the Overstreets"). <u>See</u> Compl., <u>Overstreet v. Uponor North Am., Inc.</u>, No. 13-323 ADM/JJK (D. Minn. Feb. 7, 2013). This last putative class action—filed in the District of Minnesota and assigned to this Court—asserts a lone RORA claim on behalf of California homeowners against Uponor and its affiliated companies.[4] <u>See</u> <u>id.</u>

### III. DISCUSSION

**A. Applicable Legal Standard**

The Smiths have moved to intervene solely under Rule 24(a)(2) of the Federal Rules of Civil Procedure. <u>See</u> Mot. to Intervene at 1. Rule 24(a)(2) allows a party to timely intervene as a matter of right if: (1) the motion is timely; (2) the intervenor "claims an interest relating to the property or transaction that is the subject of the action"; (3) disposition of the action "may as a

---

[4] The <u>Overstreet</u> action is thus the fifth F1960 putative class action against Defendants in the District of Minnesota, in addition to those discussed above.

practical matter impair or impede the movant's ability to protect its interest"; and (4) the existing parties do not "adequately represent" that interest. Fed. R. Civ. P. 24(a)(2); United States v. Union Elec. Co., 64 F.3d 1152, 1158-61 (8th Cir. 1995). In deciding a motion to intervene, the ruling court should "be mindful that 'the interest test' is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." Union Elec. Co., 64 F.3d at 1162 (internal quotations omitted).

**B. Intervention Before Class Certification**

As a threshold matter, George argues that the Smiths do not have standing to intervene at this time because the class parameters, if any, are yet to be determined. As a result, the Smiths cannot identify injury to a actual, legally-protected interest. In their self-styled "limited" Reply, the Smiths offer no response to this argument.

George's Article III standing argument addresses a practical concern about the Smiths' intervention, but standing is not the best lens through which to view the problem. Generally speaking, an intervenor's standing to intervene in an action relates to his or her injury and ability to pursue the claims at issue. See, e.g., United States v. Metro. St. Louis Sewer Dist., 569 F.3d 829, 833-34 (8th Cir. 2009) (holding the same standard for motion to dismiss for lack of standing applies when a party opposes intervention). In this case, George does not challenge the Smiths' alleged injury, namely whether the Smiths sufficiently alleged owning defective F1960 brass fittings sold by Defendants.

Instead, the issue is one of timing and procedural propriety. Intervention before class certification does not necessarily serve the overall purposes of a class action. Where the named plaintiffs have viable claims, courts have declined intervention before class certification as

6

premature.  Intervention before class certification raises the issue of plaintiffs' adequacy as representatives before the named parties have addressed the subject themselves.  The injection of additional legal or factual issues may also unnecessarily complicate class certification and create unintended inefficiencies.  See, e.g., Coburn v. DaimlerChrysler Servs. N. Am., LLC, 218 F.R.D. 607, 610-11 (N.D. Ill. 2003).  In Coburn, the court denied a motion for permissive intervention, holding the appropriateness of the proposed class was not a "forgone conclusion" and intervention would "only lessen the chances" of certification.  Id. at 610.  The court also held the intervenors could initiate a separate class action at any time, while granting intervention might prompt a "torrent" of other parties to seek intervention as well.  Id.; see also Siegel v. Lyons, No. C-95-3588 DLJ, 1996 WL 634206, at *8 (N.D. Cal. 1996) ("As this court has yet to reach the class certification issue, and in the absence of some other justification for adding an additional plaintiff to this action, granting [the motion to intervene] at this time would unnecessarily complicate and delay this litigation.").[5]  Rule 23(d)(B)(iii) of the Federal Rules of Civil Procedure further indicates intervention is most appropriate <u>after</u> certification, as it states the court may issue an order notifying existing class members of their right to intervene and ensure adequate representation of the class.

Assuming the Smiths have sufficiently alleged standing in their submitted complaint, the Smiths' motion to intervene is still premature.  As George correctly argues, and as the court in

---

[5] Although Coburn and Siegel considered permissive intervention as opposed to intervention by right, the courts' reasoning in these cases is persuasive and addresses several of the same considerations, such as the potential impairment of the intervenor's ability to protect its interests.  See e.g., Coburn, 218 F.R.D. at 610-11.  The decisions' reasoning is also persuasive because, as discussed below, the Court here finds no impairment of the Smiths' ability to protect their interests sufficient to warrant intervention by right.

Coburn commented, class certification is not a "forgone conclusion." The Court may ultimately certify a smaller-than-nationwide class in this action, or deny class certification altogether. If the Smiths are allowed to intervene now and either scenario occurs, the Smiths will have intervened by right without any right to do so. Their ability to pursue a RORA claim will remain unaffected. Put another way, the Smiths seek to represent unnamed class members in a class that does not and may never exist. As such, the Smiths' motion is premature. If the Court denies class certification, or grants nationwide certification, the Smiths may consider refiling their motion. In the meantime, the Smiths and their attorneys might do well to consider coordinating their litigation strategy with counsel for George and the other plaintiffs with F1960 claims in this district.

## C. Intervention by Right

In addition to being premature, the Smiths have not adequately indicated how their ability to protect their interests may be impaired or impeded by this action. RORA claims functionally identical to the Smiths' have already been asserted by plaintiffs in three putative class actions, including by plaintiffs represented by Kasdan Simonds in the District of Minnesota. The Smiths, as putative class members in each of these actions, have the ability to pursue their RORA claim separate from this action. Indeed, it appears the Smiths have already participated in discovery in Sweidan, and thus acknowledged their status as putative class members in that action. See Lieber Decl. [Docket No. 57] Ex. K (copy of letter discussing inspection of the Smiths' home). It is unclear why the Smiths need to intervene here and pursue their RORA claim for a fourth time.

At oral argument, counsel for the Smiths indicated that this action could potentially delay

or impede the progress of litigation in Sweidan. Delays alone are not enough in this case to justify intervention by right. See In re Holocaust Victim Assets Litig., 225 F.3d 191, 199 (2d Cir. 2000) (holding delay of years, the passing away of elderly potential plaintiffs, and a loss of efficiency were not obstacles sufficient to impede or impair intervenors' ability to protect their interests). It also seems unlikely that this action, initiated in January 2012, will interfere with or preclude claims in Sweidan, an action filed in July 2010.[6] Raiter Decl. [Docket No. 59] Ex. A (complaint in Sweidan). According to the parties, discovery in Sweidan has proceeded in earnest and class certification has already been briefed. See Lieber Decl. Ex. K; Raiter Decl. Ex. B (motion and memorandum filed by Kasdan Simonds on or about December 13, 2012, in support of class certification). If anything, class certification in Sweidan may affect how this action proceeds.

Finally, the recent initiation of the Overstreet action makes intervention particularly redundant. The JPML urged the named plaintiffs in the various F1960 actions to coordinate their litigation to, in part, reduce inconsistent pretrial rulings. In taking that advice and transferring their actions to the District of Minnesota, the plaintiffs currently before the Court sought to coordinate their various common law and statutory claims in a way that avoided duplication but ensured adequate consideration of state-specific claims. Defendants similarly hoped to benefit from an increase in efficiency and consistency. Whether the Smiths supported or were even

---

[6] The Smiths go to great lengths in their briefing and in a separately-filed "Request for Judicial Notice" to argue that their RORA claim is substantially different from the claims asserted by George. Setting aside the propriety of submitting supplemental legal argument in the form of a request for judicial notice, the Smiths' arguments in this regard are inapt. As discussed above, no class yet exists. If anything, differences between George's claims and a RORA claim bolster the notion that this action will not preclude or interfere with the pending RORA claims.

9

aware of the Overstreet action is unclear, but its filing now places the Smiths in the same position as the other putative class members in the F1960 actions before the Court. The Court sees no reason why the Overstreets, represented by the same firm as the Smiths, cannot adequately protect the Smiths' interests as this group of putative class actions moves forward.

## IV.  CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

1. Movants' Motion for Leave to File Reply [Docket No. 60] is **GRANTED**.

2. Movants' Motion to Intervene [Docket No. 33] is **DENIED**.

BY THE COURT:


    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  February 28, 2013.