## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| TIM GEORGE; CHARLES and JAMIE GIBBS; WILLIAM and CORIE CONNELLY; GALEN and LESLIE SATTERLEE; GAIL HENRICHSEN; DUSTIN and MARTHA BARNETT; DAVE and HOLLY MARCUS; KELLY BABB and GARY AND ELSA OVERSTREET, individually and on behalf of those similarly situated, | Civ. No. 12-249 (ADM/JJK) |
| Plaintiffs, | |
| v. | **REPORT AND** |
| UPONOR CORPORATION; UPONOR GROUP; UPONOR, INC.; WIRSBO COMPANY; and UPONOR WIRSBO COMPANY, | **RECOMMENDATION** |
| Defendants. | |

This action came before this Court for hearing by video conference on June 9, 2015, at the U.S. Courthouse, 316 No. Robert Street, St. Paul, Minnesota 55101, on the parties' Joint Motion for Preliminary Approval of Class Action Settlement and Approval of Form and Dissemination of Class Notice.

Based on its review of the pleadings, memoranda, affidavits, and arguments of counsel, this Court concludes, for the reasons set out in the proposed Order attached to this Report and Recommendation, that: this case should be provisionally and conditionally certified, subject to final approval of the settlement in conjunction with the final fairness hearing, as a class action, for settlement purposes only, pursuant Rule 23(b)(3) of the Federal Rules of Civil Procedure; the proposed settlement class should be approved; the proposed

settlement is fair, reasonable, and adequate; and the form, method and content of the class notice should be approved.

Dated: June 11, 2015

_s/Jeffrey J. Keyes_
JEFFREY J. KEYES
United States Magistrate Judge

**ATTACHMENT A**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| TIM GEORGE; CHARLES and JAMIE GIBBS; WILLIAM and CORIE CONNELLY; GALEN and LESLIE SATTERLEE; GAIL HENRICHSEN; DUSTIN and MARTHA BARNETT; DAVE and HOLLY MARCUS; KELLY BABB and GARY AND ELSA OVERSTREET, individually and on behalf of those similarly situated,<br><br>                Plaintiffs,<br><br>v.<br><br>UPONOR CORPORATION; UPONOR GROUP; UPONOR, INC.; WIRSBO COMPANY; and UPONOR WIRSBO COMPANY,<br><br>                Defendants. | Civ. No. 12-249 (ADM/JJK) |

**[PROPOSED] ORDER GRANTING JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF FORM AND DISSEMINATION OF CLASS NOTICE**

The Joint Motion for Preliminary Approval of Class Action Settlement and Approval of Form and Dissemination of Class Notice was heard on June 9, 2015. After review of pleadings and briefing, and having heard the arguments of counsel for good cause shown, it is hereby **ORDERED** that: (1) the Motion for Preliminary Approval of Class Action Settlement; (2) preliminary and conditional certification of a settlement class; (3) approval of the form, content, and dissemination of the Notice of Settlement; (4) an injunction and stay of Legal Claims (defined at ¶ 19 of the Settlement) against the Settling Defendants related to the Uponor Yellow Brass Fittings, except (a) there shall be no injunction or stay of the lawsuit styled *In Re Wirsbo Non-F1807 Yellow Brass*

3

*Litigation*, Case No. 08-cv-1223 pending in the United States District Court for the District of Nevada identified at ¶ 55(a) of the Settlement; (b) there shall be no injunction or stay of the California/Arizona Class Action Excluded Uponor Yellow Brass Fittings Claims as identified at ¶ 55(g) and Exhibit 1 of the Settlement (the "California/Arizona Class Action Excluded Uponor Yellow Brass Fitting Claims" or "35 Evolved Case List"); and (c) there shall be no injunction or stay of any matters necessary to implement, advance, or further approval of the Agreement or settlement process, are stayed pending the Final Fairness Hearing and the issuance of a Final Order and Judgment; and (5) setting of a final fairness hearing and related deadlines are **GRANTED** as follows:

1.      The parties to this action and parties from related actions pending in this District have reached a settlement agreement (the "Agreement") subject to Court approval that would resolve Uponor Yellow Brass Fittings claims throughout the nation. Except as otherwise specified, all defined terms used in this Order shall have the same meanings as set forth in the Class Action Settlement Agreement and Release executed by the Settling Parties and filed with the Court. As explained below, the Agreement proposes a settlement (the "Settlement") that falls within the Court's discretionary range of possible approval and otherwise meets the requirements for preliminary approval.

2.      The proposed Agreement executed by Class Counsel and Class Plaintiffs Tim George, Galen and Leslie Satterlee, Gail Henrichsen, Dave and Holly Marcus, Kelly Babb, Gary and Elsa Overstreet, Roger Sweidan, Susan Loomis, Rodolfo and Maria Celis, and Curtis and Tina Smith (the "Plaintiffs" or "Class Representatives") and by Defendants Uponor, Inc., f/k/a Uponor Wirsbo, Inc., f/k/a Wirsbo Company and their related companies, parent companies, predecessors, successors, subsidiaries, and sibling companies and their respective officers, directors, employees, and attorneys (collectively the "Uponor Defendants"), including the Addendum executed by all of the Materially Contributing Entities, is preliminarily approved, subject to a Final Fairness Hearing as

4

provided for in this Order to determine whether the Settlement is fair, adequate, and reasonable.

3.      The parties have presented to the Court a plan to provide the potential members of the Class with notice of the Settlement terms and the options the potential Class Members have, including among other things, to opt out of the Class, be represented by counsel of their choosing, to object to the proposed settlement, and to participate as a claimant in the Settlement. The Notice Plan proposed by Class Plaintiffs and the Uponor Defendants provides the Class with the best practicable notice under the circumstances, consistent with Federal Rule of Civil Procedure 23. In addition, the Court finds that the proposed claims procedure is fair and sufficient, and that the Notice to the Class Members provides sufficient detail to the members of the Class, so that it is appropriate to proceed with preliminary approval and the Notice Plan.

4.      This Court is satisfied that counsel have submitted sufficient information to support the conclusion that there are no obvious deficiencies in the proposed Agreement and that potential members of the Class should be notified of the proposed Settlement and a Final Fairness hearing scheduled.

5.      As discussed below, continued or additional litigation involving Uponor Yellow Brass Fitting claims against the Uponor Defendants and/or the Materially Contributing Entities will interfere with the Court's jurisdiction to consider, approve, and effectuate the Settlement, which necessitates temporary injunctive relief in aid of the Court's jurisdiction.

### Preliminary Approval of Settlement

6.      This case is provisionally and conditionally certified, subject to final approval of the Settlement in conjunction with the Final Fairness hearing, as a class action for settlement purposes only pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. The Settlement Class shall be defined as follows:

All Persons that own (owned or subsequently purchase/own) buildings, homes, residences, Common Areas, Residential Units, or Non-Residential Properties located in the United States, built on or after January 1, 2002, which contain Uponor Yellow Brass Fittings.

This Settlement Class includes, without limitation all individuals and entities, including those in active litigation, the Complaints, and/or arbitration, seeking arbitration or ordered to arbitration by any state or federal court, as well as their spouses, joint owners, heirs, executors, administrators, subrogated insurance companies, insurers, mortgagees, tenants, creditors, lenders, predecessors, successors, subsequent owners or occupants, trusts and trustees, attorneys, agents, and assigns and all Persons who have legal standing and are entitled to assert a claim on behalf thereof. The Settlement Class includes, without limitation, all Persons who subsequently purchase or otherwise obtain an interest in a property covered by this Agreement without the need of any formal assignment by contract or court order.

7.      Parties excluded from the Settlement Class ("Excluded Persons") are:

a.      All settlement class members encompassed within the settlement class to be certified in the lawsuit styled *In Re Wirsbo Non-F1807 Yellow Brass Litigation*, Case No. 08-cv-1223 pending in the United States District Court for the District of Nevada ("Las Vegas Class Action"), including any lawsuits and/or arbitration proceedings consolidated within the Las Vegas Class Action or seeking relief for, Residential Units, Common Areas and/or Non-Residential Properties encompassed within the settlement class in the Las Vegas Class Action. To the extent any Las Vegas Class Action settlement class members own structures containing Uponor Yellow Brass Fittings that fall outside the class definition in the Las Vegas Class Action, claims related to such structures shall be included in this Agreement.

b.      All Persons, including owners of Residential Units, Non-Residential Properties and/or Common Areas (such as homeowners association) who/which, on a timely basis, exercised their rights under Rule 23 of the Federal Rules of Civil Procedure to: i) opt out of the Settlement Class pursuant to the terms of the Settlement Agreement; and ii) all persons defined as "Excluded Persons" in the settlement agreement entered into related to the Las Vegas Class Action;

6

c.      All Persons who previously filed an individual lawsuit concerning Uponor Yellow Brass Fittings in any court of law, provided that claim has been resolved with a final judgment or settlement, whether or not favorable to the Person;

d.      The Uponor Defendants, any entity in which the Uponor Defendants have a controlling interest, any entity which has a controlling interest in the Uponor Defendants, and the Uponor Defendants' legal representatives, assigns, and successors;

e.      The presiding judge in the instant case and any member of the judge's immediate family;

f.      All Persons who own or have owned a structure containing Uponor Yellow Brass Fittings installed before January 1, 2002; and

g.      All those persons/claims identified on Exhibit "1" to the Settlement Agreement, which contains a listing of the claims encompassed within the "California/Arizona Class Action Excluded Uponor Yellow Brass Fitting Claims" (hereinafter the "35 Evolved Case List") which is covered by a separate Settlement Agreement.

8.      The Court finds that this Class definition is appropriate and is not overly broad. The proposed Settlement provides substantial benefits to the Class Members, including establishment of a claims process that will pay for damage resulting from leaks or decreased water flow caused by dezincification in plumbing systems containing Uponor Yellow Brass Fittings.

9.      The Court preliminarily concludes that, for purposes of approving this settlement only and for no other purpose and with no other effect on this litigation should the proposed Settlement Agreement not ultimately be approved or should the Effective Date not occur, the proposed Rule 23 Class likely meets the requirements for certification under the Rule because:

a.      The proposed class contains thousands of members and is so numerous that joinder is impracticable;

b.      There exist questions of fact and law common to the members of the Class. All members of the Class contend that the Uponor Yellow Brass Fittings installed in their properties were defective;

c.      The claims of the Class Representatives are typical of the claims of the Class Members;

d.      Class Representatives and Class Counsel will fairly and adequately protect the interests of the Class Members; and

e.      Resolution of this action in the manner proposed by the Agreement is superior to other available methods for a fair and efficient adjudication of the action, and common issues resolved through this Settlement predominate over individual issues. Because this action is being settled rather than litigated, the Court need not inquire whether the case, if tried, would present intractable management problems. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). The Court is satisfied that individualized defenses need not be adjudicated in order to approve the Settlement and that any individualized defenses do not predominate rendering class certification inappropriate in the settlement context.

10.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Class Action Settlement and Release Agreement between Plaintiffs and all Class Members who have not properly excluded themselves pursuant to Rule 23 and the Uponor Defendants as well as the Materially Contributing Entities who are parties to the Addendum to the Settlement Agreement is preliminarily approved.

11.     In making this determination, the Court finds that there is "'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n-E. R.R.*, 627 F.2d 631, 634 (2d Cir. 1980).

8

12.     The evidence demonstrates that the Settlement, which is recommended by experienced counsel, falls well within a range warranting notice to absent Class Members. Following the Effective Date, the Uponor Defendants have agreed, pursuant to the terms set forth in the Settlement Agreement, to pay Class Members for damage caused by leaks or occlusion of Uponor Yellow Brass Fittings, pay for repairs to those systems, and when appropriate pay to have the systems replaced. The funding to be provided by the Uponor Defendants, with significant monetary contribution from the Materially Contributing Entities, includes the payment of claims, pursuant to the terms of the settlement agreement, to be determined by an independent Claims Administrator, the cost of the Notice Plan, an award of attorney fees and costs, and incentive awards for the Class Representatives if approved by the Court.

13.     The Settlement provides the Class with an expedited and substantial source of recovery while eliminating risks to the Class that further litigation would yield little or no recovery. The Settlement eliminates risks associated with insurance coverage disputes between the Uponor Defendants, the Materially Contributing Entities and their respective insurers. In addition, the Settlement allows Class Members to avoid risks and contingencies relating to the abilities to collect any future judgment against the Uponor Defendants and/or the Materially Contributing Entities.

14.     The Settlement followed years of thorough investigation and discovery and is the product of arm's-length negotiation between experienced, capable counsel, assisted by an experienced and capable professional mediator. *See* 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.41 at 90 (4th ed. 2002) ("Newberg") ("There is usually a presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for approval."). In the final-approval context, courts have given substantial weight to the experience of the attorneys who prosecuted and negotiated the settlement. *See, e.g., Reed v. Gen. Motors*

*Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). There are no grounds to doubt the fairness of the Settlement, or any other obvious deficiencies, such as unduly preferential treatment of a class representative or segments of the class, or excessive compensation for attorneys.

15.     Lead Class Counsel's recommendation for preliminary approval reflects his reasonable conclusion that the Class would benefit more from the creation of an immediate claims process funded by the Uponor Defendants and the Materially Contributing Parties than from the risky prospect of further litigation and trying to pursue and collect future judgments against the Uponor Defendants and/or the Materially Contributing Entities.

16.     In the event the Effective Date occurs, Class Members shall be deemed to have and shall have forever released and discharged their claims against Uponor and the MCEs in accordance with the Settlement Agreement. In the event the Effective Date does not occur for any reason whatsoever: (1) the Agreement shall be deemed null and void and shall have no effect whatsoever; (2) the consolidation and class certification orders shall automatically be vacated; and (3) the Agreement and the fact that it was entered shall not be offered, received, or construed as an admission or as evidence for any purpose, including the ability of any other class to be certified.

**Appointment of Class Representation and Class Counsel**

17.     The Court appoints the following class representatives: Tim George, Galen and Leslie Satterlee, Gail Henrichsen, Dave and Holly Marcus, Kelly Babb, Gary and Elsa Overstreet, Roger Sweidan, Susan Loomis, Rodolfo and Maria Celis, and Curtis and Tina Smith, individually and on behalf of all Settlement Class Members.

18.     To represent the Class and its members, the Court appoints Robert Shelquist of Lockridge Grindal Nauen, PLLP; Lawrence Deutsch of Berger & Montague, PC; J. Randall Jones of Kemp, Jones & Coulthard, LLP; and Scott K. Canepa of Canepa, Riedy, Abele & Costello.

**Establishment of Claims Process**

19.     The Settlement Agreement contemplates the establishment of a Claims Process. The Uponor Defendants will fund the Claims Process, including the payment of claims to be determined by an independent Claims Administrator, the cost of the Claims Process, the cost of the Notice Plan, and an award of attorney fees and costs, as ordered by the Court. The Materially Contributing Entities have agreed to contribute funds to Uponor to be used to fund the Settlement.

20.     The Settling Parties will prepare a claims procedure that sets forth with specificity the process for assessing and determining the validity and value of claims and a payment methodology to qualifying Settlement Class Members.

21.     The Settling Parties will retain the services of a Claims Administrator and a Special Master for assistance with the Claims Process. The Claims Administrator shall be responsible for effectuating the Claims Process. The Special Master shall be responsible for resolving disputes, if any, arising from the Claims Process. As provided for in the Settlement Agreement, the Uponor Defendants shall pay all reasonable fees and expenses of the Claims Administrator and Special Master.

**Notice Plan**

22.     The Court approves the Notice Plan and the form and content of the Settlement Notice proposed in the Agreement.

23.     Notice to members of the Class, except statutory notice required to be given by the Uponor Defendants pursuant to 28 U.S.C. § 1715, shall be the responsibility of the Uponor Defendants. To effect such notice, the Court understands that the parties have engaged Rust Consulting ("RC") and Kinsella Media ("KM") to advise them on providing notice. RC and KM have proposed a Notice Plan that will provide notice to the members of the Class consistent with the parties' agreement and as ordered below.

11

24.     The Notice Plan detailed by Kinsella Media, LLC in the Affidavit of Shannon R. Wheatman provides the best notice practicable under the circumstances and constitutes due and sufficient notice of the Settlement Agreement and the Final Fairness Hearing to the Class and all persons entitled to receive such notice as potential members of the Class.

25.     The "best notice practicable" does not mean actual notice, nor does it require individual mailed notice where there are no readily available records of class members' individual addresses or where it is otherwise impracticable. *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 548-53 (N.D. Ga. 1992); Manual for Complex Litigation § 21.311, at 395 (4th ed. 2014).

26.     In situations such as this action, where all potential Class Members cannot be identified for purposes of sending individual notice, notice by publication is sufficient. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 317-18 (1950); s*ee also Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004); *Kaufman v. Am. Express Travel Related Servs. Co. Inc.*, 264 F.R.D. 438, 445-46 (N.D. Ill. 2009); *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 107 (S.D. N.Y. 2007).

27.     The Notice Plan's multi-faceted approach to providing notice to Class Members whose identity is not known to the Settling Parties constitutes "the best notice that is practicable under the circumstances" consistent with Rule 23(c)(2)(B). S*ee, e.g., In re Holocaust Victims Assets Litig.*, 105 F. Supp. 2d 139, 144 (E.D. N.Y. 2000) (approving plan involving direct-mail, published notice, press releases and earned media, Internet and other means of notice).

## Opt-Out Procedure

28.     Notice to Class Members must clearly and concisely state the nature of the lawsuit and its claims and defenses, the Class certified, the Class Member's right to appear through an attorney or opt out of the Class, the time and manner for opting out,

and the binding effect of a class judgment on members of the Class. Fed. R. Civ. P. 23(c)(2)(B).

29.     Compliance with Rule 23's notice requirements also complies with Due Process requirements. "The combination of reasonable notice, the opportunity to be heard, and the opportunity to withdraw from the class satisfy due process requirements of the Fifth Amendment." *In re Prudential Sales Practice Litig. Agent Actions*, 148 F.3d 283, 306 (3rd Cir. 1998).

30.     The proposed notice and explanation of the process to opt out meet due-process requirements. The proposed notice explains the action, who is included in the case, and the right to opt out or appear through an attorney. The notice also describes the time and manner for opting out.

31.     Prospective Class Members can readily determine whether they are likely to be Class Members, since membership depends largely on presently or previously owning a building that has or had a Uponor Yellow Brass Fittings plumbing system. The stamps placed on the brass insert fittings and clamps for the pipe make inclusion in the Class readily ascertainable.

32.     The Notice Plan will advise Class Members of the option to opt out of the settlement and pursue their claims individually. A Class Member that seeks to be excluded from the settlement must send a letter or opt-out form requesting to be excluded. The letter or opt-out form must include the Class Member's name, address, telephone number, signature, and the address of the structure that contains the Uponor Yellow Brass Fittings system. The completed letter or opt out form shall bear the signature(s) of the potential Class member having a legal interest in the property being opted out (even if represented by counsel).

33.     A Class Member's letter or opt-out form requesting exclusion must be mailed to and received by the Claims Administrator by August 19, 2015. Letters must be mailed to the following address:

Nationwide Uponor Settlement Exclusions
P.O. Box 0000
Faribault, MN 55021-1614

The actual address used for these mailings will be established by the Claims Administrator and shall be provided in the notice communications and on the settlement web site.

34.     The Court approves the notice of the right to opt out of the case because the notice explains the process and right to opt out of the Settlement.

35.     Except for those potential members of the Class who have filed a timely and proper opt-out, all others will be deemed Class Members for all purposes under the Agreement.

36.     All members of the Class shall be bound by the Agreement and by all subsequent proceedings, orders, and judgments in this litigation. Any Settlement Class Member who elects to opt out of the Agreement shall not be entitled to relief under or be affected by the Agreement or any related orders and judgments.

37.     Potential Class Members who have elected to opt out may withdraw their opt-out prior to the Effective Date, but only if they accept the benefits and terms of the Agreement and dismiss with prejudice any other pending action against the Uponor Defendants and Materially Contributing Entities arising from damage to their affected buildings, homes, residences, or any other structures as caused by any alleged defects in the Uponor Yellow Brass Fittings systems installed in those properties.

38.     Class Counsel may contact persons who file an opt-out form or letter to challenge the timeliness and validity of any opt-out request, as well as the right to effect the withdrawal of any opt-out filed in error and any exclusion which that Class member

14

wishes to withdraw for purposes of participating in the Settlement as set forth in the Agreement. The Court shall determine whether any of the contested opt-outs are valid.

39.     The Notice Plan will advise Class Members of the option to exclude themselves from the settlement and pursue their claims individually. Notice periods for opting out are "almost wholly an exercise in the Court's discretion." *In re Potash Antit. Litig.*, 161 F.R.D. 411, 413, n.4 (D. Minn. 1995). The opt-out period provided for in connection with the Settlement is reasonable. *See, e.g., id.* ("In selecting a 60-day period, we are satisfied that the period allowed will neither compel an unnecessarily rushed response, nor will it lull the potential class members into complacency"). Federal courts have regularly approved opt-out periods in which the deadline to opt out was 60 days or fewer.[1]

40.     Notice to Class Members must clearly and concisely state the nature of the lawsuit and its claims and defenses, the Class certified, the Class member's right to appear through an attorney or opt out of the Class, the time and manner for opting out, and the binding effect of a class judgment on members of the Class. Fed. R. Civ. P. 23(c)(2)(B).

---

[1] *Id.*; *see also In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 716 F.3d 1057 (8th Cir. 2013) (affirming district court's approval of nationwide class settlement with 60-day opt-out deadline in another Uponor plumbing case); *Fidel v. Farley*, 534 F.3d 508, 513-15 (6th Cir. 2008) (affirming 46-day opt-out period and recognizing that publication notice and notice provided to brokerage houses on behalf of stockholders satisfies due process); *DeJulius v. New England Health Care Emp. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) (affirming 32-day opt-out period and noting that "[f]or due process purposes, rather than looking at actual notice rates, our precedent focuses upon whether the district court gave 'the best notice practicable under the circumstance'"); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993) (affirming 31-day opt-out period pursuant to dual notice plan, even though one-third of the class members received untimely notice); *In re OCA, Inc. Sec. & Deriv. Litig.*, Civ. A. No. 06-2165, 2008 WL 4681369, at *16 (E.D. La. Oct. 17, 2008) (approving 39-day opt-out period and noting that courts have typically found notice sent to brokerage houses adequate, even where the notice was not then sent to class members in a timely manner).

41.     Compliance with Rule 23's notice requirements also complies with Due Process requirements. "The combination of reasonable notice, the opportunity to be heard, and the opportunity to withdraw from the class satisfy due process requirements of the Fifth Amendment." *Prudential*, 148 F.3d at 306.

42.     The proposed Notice Plan in the present case meets those requirements. The notices explain the action, the Class, and the right to opt out or appear through an attorney. They also describe the time and manner for opting out.

43.     Prospective Class Members can readily determine whether they are likely to be Class Members, since membership depends largely on presently or previously owning a structure that has a plumbing system with Uponor Yellow Brass Fittings. Periods of approximately two months for opting out have been approved in other cases. *See, e.g., Supermarkets Gen'l Corp v. Grinnell Corp.*, 490 F.2d 1183, 1184-85 (2d Cir. 1974); *Pierce v. Novastar Mortgage, Inc.*, No. C05-5835, 2007 WL 1046914, at *2 (W.D. Wash. April 7, 2007).

**Objections to Settlement**

44.     A member of the Class may object to the Settlement Agreement by filing a written objection. To exercise this right to object, a Class Member must provide a written notice of objection by letter. The letter must state that the Class Member objects to the settlement in *George, et al. v. Uponor, et al.* The letter must also state the objecting Class Member's name, address, telephone number, signature of the Class Member, and the Class Member's reasons for objecting to the settlement. The objection must bear the signature of the Class Member having a legal interest in the property being opted out (even if represented by counsel).

45.     To be considered, each objection letter must state the exact nature of the objection, the facts underlying the objection, and whether or not the objector intends to appear at the Final Fairness Hearing. The objector must also provide a copy of any

16

documents which the objector intends to use at the Final Fairness Hearing. If the objector is represented by counsel, the objection shall also be signed by the attorney who represents the objector. Co-Lead Class Counsel, Counsel for the Uponor Defendants, and the Clerk of Court must be served with copies of the objections no later than August 19, 2015.

46.      Any attorneys hired by individual Class Members for the purpose of objecting to the proposed Settlement shall file with the Clerk of Court and serve on Lead Class Counsel and counsel for the Uponor Defendants a notice of appearance, not later than August 19, 2015.

47.      All objection letters must be received by the Claim Administrator by August 19, 2015. A copy of the objection letter must be mailed to each of these three addresses:

Clerk of the Court
U.S. District Court for the District of Minnesota
300 South Fourth Street
Suite 202
Minneapolis, MN 55415

J. Randall Jones
Michael J. Gayan
Kemp, Jones & Coulthard, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, NV 89169

John R. Schleiter
Howard Lieber
Grotefeld, Hoffman, Schleiter, Gordon & Ochoa
311 South Wacker Drive, Suite 4500
Chicago, IL 60606

Darren K. Cottriel
Jones Day
3161 Michaelson Drive, Suite 800
Irvine, CA 92612

48.      No person shall be entitled to contest the approval of the terms and conditions of the Agreement or the Final Order and Judgment requested thereon except by filing and serving written objections in accordance with the provisions of this Order

and the Agreement. Any member of the Class who does not submit a timely, written objection in compliance with all of the procedures set forth in this Order and the Agreement shall be deemed to and shall have waived all such objections and will, therefore, be bound by all proceedings, orders, and judgments in this case, which will be preclusive in all pending or future lawsuits or other proceedings.

49.     No person or entity shall be entitled to contest the approval of the terms and conditions of the Agreement or the Final Order and Judgment requested thereon except by filing and serving written objections in accordance with the provisions of this Order and the Agreement.

**Stay of Proceedings and Preliminary Injunction**

50.     The Settlement appropriately seeks entry of a temporary injunction prohibiting certain Class Members from participating in any other proceeding in any jurisdiction based on or relating to Legal Claims (defined at ¶ 19 of the Settlement Agreement) regarding the dezincification of Uponor Yellow Brass Fittings during the notice and opt-out period between preliminary approval and the Final Fairness Hearing. This type of injunctive relief is commonly granted in preliminary approvals of class-action settlements pursuant to the All Writs Act and the Anti-Injunction Act.

51.     The All Writs Act authorizes the Court to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) (2006). The Act empowers a federal court to "enjoin almost any conduct 'which, left unchecked, would have . . . the practical effect of diminishing the court's power to bring the litigation to a natural conclusion.'" *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1102 (11th Cir. 2004) (quoting *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978)).

52.     Although the Anti-Injunction Act limits a federal court's powers under the All Writs Act, it expressly authorizes a federal court to enjoin parallel state court

proceedings "where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283 (2006). "[T]he parallel 'necessary in aid of jurisdiction' language is construed similarly" in both the All Writs Act and the Anti-Injunction Act. *Newby*, 302 F.3d 295, 301 (5th Cir. 2002); *see also In re Baldwin-United Corp.*, 770 F.2d 328, 335 (2d Cir. 1985).

53.     It is undisputed that if the Settlement is finally approved, all of the cases and claims that would be subject to the injunction would become moot.

54.     Federal courts' broad authority under the All Writs Act encompasses the power to enjoin both subsequent and parallel arbitration proceedings. *In re Y & A Grp. Sec. Litig.*, 38 F.3d 380, 382 (8th Cir. 1994) ("No matter what, courts have the power to defend their judgments as res judicata, including the power to enjoin or stay subsequent arbitrations."); *Bank of Am. v. UMB. Fin. Servs., Inc.*, 618 F.3d 906, 914-15 (8th Cir. 2010) (noting that "the district court has the inherent ability to protect its own jurisdiction over the dispute pending before it," and affirming the district court's sua sponte injunction of parallel arbitration proceedings); *In re PaineWebber Ltd. P'ships Litig.*, No. 94 CIV. 8547 SHS, 1996 WL 374162, at *4 (S.D. N.Y. July 1, 1996) ("[I]t would be incongruous if the Court had the authority to stay pending litigation, but not to enjoin arbitration, 'in aid of its jurisdiction' even before judgment is entered.").

55.     In cases such as this, where parties to complex, multidistrict litigation have reached a settlement agreement after lengthy, protracted, and difficult negotiations, parallel proceedings can "'seriously impair the federal court's flexibility and authority' to approve settlements in the multi-district litigation" and threaten to "destroy the utility of the multidistrict forum otherwise ideally suited to resolving such broad claims." In re Baldwin-United, 770 F.2d at 337; *see also In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 236 (3d Cir. 2002) (finding threats to court's jurisdiction "particularly significant

where there are conditional class certifications and impending settlements in federal actions").

56.     An extensive body of federal case law recognizes that complex, multidistrict litigation like this one implicates special considerations under the All Writs Act.[2] "In complex cases . . . the challenges facing the overseeing court are such that it is likely that almost any parallel litigation in other fora presents a genuine threat to the jurisdiction of the federal court." *In re Diet Drugs*, 282 F.3d at 236.

57.     The All Writs Act empowers district courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and

---

[2] *See In re Baldwin-United Corp.*, 770 F.2d at 337 (stating that complex class action pending before the federal district court "was the virtual equivalent of a res over which the district judge required full control"); *In re Asbestos Sch. Litig.*, No. 83-0268, 1991 WL 61156, at *3 (E.D. Pa. Apr. 16, 1991) (staying state court proceedings is proper under federal law" "where a federal court is on the verge of settlement of a complex matter, and state court proceedings undermine its ability to achieve that objective" (internal citations omitted)), *aff'd mem.*, 950 F.2d 723 (3d Cir. 1991); *In re The Prudential Ins. Co. of Am. Sales Practices Litig.*, 314 F.3d 99,104 (3d Cir. 2002) (" [D]istrict courts overseeing complex federal litigation are especially susceptible to disruption by related actions in state courts."); *Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 202-03 (3d Cir. 1993) (approving of *In re Baldwin-United* and *In re Asbestos Sch. Litig.* and noting that complex class actions may be appropriate instances in which to enjoin parallel proceedings); *Newby*, 302 F.3d at 301 ("[T]he district court had authority to compel lawyers properly before it from engaging in vexatious and needlessly harassing maneuvers that challenged judicial efforts to . . . preserv[e] fair processes in the complex suit in federal courts.") *Three J Farms, Inc. v. Plaintiffs' Steering Comm. (In re Corrugated Container Antit. Litig.)*, 659 F.2d 1332, 1334-35 (5th Cir. 1981) (affirming injunction in a "complicated antitrust action [that] has required a great deal of the district court's time and has necessitated that it maintain a flexible approach in resolving the various claims of the many parties"); *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir. 1997) (approving of appellate decisions in which "courts have extended the exception to consolidated multidistrict litigation, where a parallel state court action threatens to frustrate proceedings and disrupt the orderly resolution of the federal litigation"); *Liles v. Del Campo*, 350 F.3d 742, 746-47 (8th Cir. 2003) (affirming district court's injunction in class action so as to ensure enforceability of the preliminary settlement approval and to prevent further depletion of settlement fund); *Negrete v. Allianz Life Ins. Co. of NA.*, 523 F.3d 1091, 1102 (9th Cir. 2008) (commenting that "the existence of advanced federal in personam litigation [that] may, in some instances, permit an injunction in aid of jurisdiction . . . is a fairly common theme"); *Battle v. Liberty Nat'l Life Ins. Co.*, 877 F.2d 877, 882 (11th Cir. 1989) ("[I]t makes sense to consider this ease, involving years of litigation and mountains of paperwork, as similar to a res to be administered.").

principles of law." 28 U.S.C. § 1651; *see also Wolf Designs, Inc. v. Donald McEvoy Ltd., Inc.*, 341 F. Supp. 2d 639, 642 (N.D. Tex. 2004) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").

58.     "Whether viewed as an affirmative grant of power to the courts or an exception to the Anti-Injunction Act, the All-Writs Act permits courts to certify a national class action and to stay pending federal and state cases brought on behalf of class members." *In re Joint E. & S, Dist. Asbestos Litig.*, 134 F.R.D. 32, 37 (E.D.N.Y. 1990). "The power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice." *United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977) (upholding order for telephone company to assist with pen register).

59.     "[D]istrict courts overseeing complex federal litigation are especially susceptible to disruption by related actions in state fora." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 314 F.3d 99, 104 (3d Cir. 2002). Concerns of Defendants in large class actions about remaining exposed to "countless suits in state court despite settlement of the federal claims" are a consequence "that would seriously undermine the possibility for settling any large, multi-district class action." *Id.* at 104-05 (quotations omitted). Accordingly, the All-Writs Act authorizes this Court to certify the class and enjoin other litigation.

60.     This is a decidedly complex class action involving lengthy negotiations and a proposed settlement reached after years of motion practice and discovery and many months of formal and informal arm's-length negotiations. The Court has the power and authority to enjoin current or future federal proceedings regarding and future state court

proceedings. *See Newby*, 302 F.3d at 301 (noting that the Anti-injunction Act "does not preclude injunctions against a lawyer's filing of prospective state court actions").

61.     The requested injunctive relief will impact only a few existing lawsuits. None of the plaintiffs in these cases would be unduly prejudiced by a temporary injunction pending the Final Fairness Hearing.

62.     Accordingly, the Court hereby orders an injunction and stay of Legal Claims (defined at ¶ 19 of the Settlement) against the Settling Defendants related to the Uponor Yellow Brass Fittings, except (a) there shall be no injunction or stay of the lawsuit styled *In Re Wirsbo Non-F1807 Yellow Brass Litigation*, Case No. 08-cv-1223 pending in the United States District Court for the District of Nevada identified at ¶ 55(a) of the Settlement; (b) there shall be no injunction or stay of the California/Arizona Class Action Excluded Uponor Yellow Brass Fittings Claims at identified at ¶ 55(g) and Exhibit 1 of the Settlement; and (c) there shall be no injunction or stay of any matters necessary to implement, advance, or further approval of the Agreement or settlement process, are stayed pending the Final Fairness Hearing and the issuance of a Final Order and Judgment.

63.     In addition, all members of the Class—except those expressly excluded from this injunction and stay in the foregoing paragraph—are hereby enjoined from filing, commencing, prosecuting, maintaining, intervening in, participating in (as Class Members or otherwise), or receiving any benefits from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding or order in any jurisdiction for Legal Claims (defined at ¶19 of the Settlement) based on or relating to the Uponor Yellow Brass Fittings, the claims and causes of action, or the facts and circumstances relating thereto. In addition, all members of the Class are hereby preliminarily enjoined from filing, commencing, prosecuting or maintaining any other lawsuit as a class action (including by seeking to amend a pending complaint to include class allegations, or by

seeking class certification in a pending action in any jurisdiction) on behalf of members of the Class, if such other class action is based on or relates to the Uponor Yellow Brass Fittings, the claims and causes of action, or the facts and circumstances relating thereto, in this proceeding, and/or the Agreement. The Court finds that issuance of this preliminary injunction is necessary and appropriate in aid of the Court's jurisdiction over this action. The Court finds no bond is necessary for issuance of this injunction.

### Final Fairness Hearing

64.     Pursuant to Federal Rule of Civil Procedure 23, the Court has scheduled the Final Fairness Hearing to take place on **September 8, 2015, at 2:00 p.m. CST in Courtroom 13W, at the United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota**, to determine whether the proposed Settlement is fair, reasonable, and adequate, to consider any objections by members of the Class, and to consider an award of reasonable attorneys' fees and expenses and an award to the Class Representatives.

65.     By August 24, 2015, the parties shall file a motion requesting that the Court grant final approval of the Settlement embodied in the Agreement and that the Court enter a Final Order and Judgment consistent with the terms of the Agreement, in the form required by the Agreement and as submitted by the parties. At that time, Class Counsel may also file a petition for an award of attorney's fees and reimbursement of expenses.

/ / /

/ / /

23

66.    Before the Final Fairness Hearing, Class Representatives and the Uponor Defendants may file memoranda of law responding to any objections of the members of the Class filed with the Court.

**IT IS SO ORDERED.**

BY THE COURT:

_____
Hon. Ann D. Montgomery
United States District Judge

Dated: _____.

24