## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| TIM GEORGE; GALEN and LESLIE SATTERLEE; GAIL HENRICHSEN; DAVE and HOLLY MARCUS; KELLY BABB; GARY and ELSA OVERSTREET; ROGER SWEIDAN and SUSAN LOOMIS; RODOLFO and MARIA CELIS; CURTIS and TINA SMITH, individually and on behalf of those similarly situated, | Civ. No. 12-249 (ADM/JJK) |

                        Plaintiffs,

v.

UPONOR CORPORATION, et al.,

               Defendants.

---

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARD FOR ATTORNEY FEES AND COSTS AND PAYMENT OF SERVICE AWARDS**

### Introduction

On September 8, 2015, the undersigned United States District Judge heard oral argument on the Motion for Final Approval of Class Action Settlement and Award for Attorney Fees and Costs and Payment of Service Awards [Docket No. 264] ("Motion"). There were no objections or opposition to the final approval and award for attorney fees and costs and payment of service awards.  For the reasons set forth below, the Motion is granted.

**Background**

This case concerns Uponor and Wirsbo's non-F1807 yellow brass fittings in PEX systems ("Uponor YBFs") sold by Defendants Uponor, Inc., et al. (collectively "Uponor Defendants") throughout the country from approximately 1996 to approximately 2012. See generally Declaration of Lawrence Deutsch in Supp. of Mot. [Docket No. 268] ("Deutsch Decl.") ¶¶ 1, 23. Plaintiffs contend the Uponor YBFs are uniformly defective. See generally Third Amended Complaint [Docket No. 239]. Uponor denies these contentions. The cost per home to replumb and replace the existing plumbing system, in an average home, can approach $4,000.00 to $7,000.00. Deutsch Decl. ¶ 22. Although the Uponor Defendants do not know precisely how many structures contain Uponor YBFs or where those systems are located, Plaintiffs estimate there are 250,000 structures containing these systems. Id. ¶ 23.

Plaintiffs filed this case in 2012. [Docket No. 1]. Since then, the parties have engaged in extensive motion practice and discovery.

Mediator Ross Hart, Esq. oversaw the parties' arms' length negotiations, which formally began in February 2014 and eventually involved Plaintiffs' counsel, counsel for Uponor Defendants, counsel for third-party defendants, insurance coverage counsel for Uponor Defendants and their insurers, and insurance company representatives. Deutsch Decl. ¶¶ 18-19. The parties ultimately reached a settlement on the framework for the settlement of the class claims in July 2014. Id. ¶ 19. In the weeks after arriving at agreement on the deal points which afforded benefits to class members, the parties

engaged in further negotiations related to the fee and expense amounts and then signed a Memorandum of Understanding ("MOU") memorializing the full terms of the settlement.  Id.

The ultimate Settlement provided for substantial benefits to class members, as well as leaving to the Court's discretion an award of attorneys' fees, costs, and expenses up to an aggregate of $7,500,000 to be paid separately from the fund available to class members.  See generally Deutsch Decl. Ex. 1. ("Settlement Agreement").  The Uponor Defendants also agreed to fully fund the cost of providing notice to the class, as well as funding the claims administration and class representative service awards.  Id.  The Uponor Defendants will compensate Class Representatives up to $5,000 per home.  Id.

On June 12, 2015, this Court issued an Order Granting the Motion to Certify Class for Settlement Purposes and for Preliminary Approval of Class Action Settlement and Form and Dissemination of Notice to the Class [Docket No. 248] ("Class Certification Order").  The preliminary approval of the Settlement in June 2015 scheduled a final fairness hearing for September 8, 2015.  Class Certification Order [Docket No. 248].

The Settlement terms are outlined in a Class Action Settlement Agreement and Release dated May 2015 ("Settlement Agreement"),[1] which the Court preliminarily approved on June 12, 2015. The Settlement provides significant benefits to homeowners

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning as ascribed to them in the parties' Settlement Agreement.

with Uponor YBFs.  Deustch Decl., Ex. 1.  While the Settlement Agreement sets out terms of resolution in greater detail, key provisions include:

All Class Members will have an additional two-year warranty for eligible Property Damage Claims relating to Uponor YBFs. For warranties regarding low flow and replacement failures, depending on whether the covered property was sold within ten years after the Uponor YBFs installation, Class Members will receive either a five-year warranty running from the Effective Date (sold more than ten years after installation) or twenty-five year warranty running from the installation date (sold within ten years of installation) which benefits take effect following the Effective Date.

For both past and future property damage claims, Class Members may receive up to $60,000 per claim for residential units, non-residential and common areas. For non-low flow fitting replacement claims (during original or extended warranty), Class Members with residential units can recover 60% of covered costs up to $7,000 per unit for one failure and 60% of costs to complete re-fit of all Uponor Yellow Brass fittings in Uponor/Wirsbo PEX System up to $7,000 for two or more failures. For non-residential and common areas, the benefits are 60% of covered costs up to $2,500 per unit (maximum recovery: $100,000 per building) for one failure and 60% of costs to complete re-fit of all Uponor Yellow Brass fittings in Uponor/Wirsbo PEX System up to $2,500 per unit (maximum recovery: $100,000 per building) for failures in 30% of units. For low flow claims, Class Members will receive 60% of covered costs, up to $7,000 per unit for

residential and up to $2,500 per unit (maximum recovery: $100,000 per building) for

non-residential and common areas.

Finally, for re-fit/re-plumb claims, Class Members will also receive 60% of

covered costs up to $7,000 per unit for residential units. Non-residential and common

area claims will receive 60% of costs of replacement of all Uponor Yellow Brass fittings

in the Uponor/Wirsbo PEX System up to $2,500 per unit (maximum recovery: $100,000

per building) if there are failures in 30% of units.

After preliminary approval of the Settlement, the parties carried out the notice

program, hiring experienced consulting firms to design and implement the plan.  See

generally Declaration of Shannon R. Wheatman [Docket No. 269] ("Wheatman

Decl."); Declaration of Joel Botzet [Docket No. 270] ("Botzet Decl.").  The plan

consisted of direct mail notices to known owners of Uponor YBFs system (including

81,914 potential Class Members), notice publications in leading consumer magazines

designed to target home and property owners, Internet advertising featuring banner

advertisements, and paid media efforts through a settlement website,

www.brassfittingsclass.com/nationwide.  Botzet Decl. ¶¶ 9-14.  The plan reached over

76.2% of Homeowners with an average frequency of 3.5 times.  Wheatman Decl. ¶¶

16, 22.

Class member reaction has been positive and objections minimal.  See generally

Wheatman Decl.; Botzet Decl.  Out of at least 250,000 potential class members, no

objections were received.  Botzet Decl. ¶ 13.  Only three requests for exclusion were

received.  *Id*. ¶ 12.  Moreover, although claims processing has not yet started, the claims administrator has already received at least 49 forms, and as of August 22, 2015, there have been at least 239 requests for the claim form.  Deutsch Decl. Ex. 3.

## Discussion

The threshold issue is whether the settlement class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and at least one prong of Rule 23(b).  Upon determining that the class satisfies Rule 23, the Court will then analyze the Settlement itself, as well as any relevant objections.  Finally, the Court will address the award of payments to class representatives and attorneys' fees.

## I.    Settlement Class Certification

Rule 23(a) requires as a prerequisite for class certification that the following be shown:  (1) the class is so numerous that joinder is impracticable; (2) questions of law or fact are common to the class; (3) the representative parties' claims or defenses are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the class interests.  Fed. R. Civ. P. 23(a)(1-4).  Once the Rule 23(a) prerequisites are met, the class action may be maintained if the court determines that a Rule 23(b) factor is met, including that questions of law common to the class predominate over individual member questions and that a class action is the superior method for adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).

A.      **Rule 23(a) Prerequisites**

The proposed class here meets all the prerequisite requirements of Rule 23(a).

Courts in Minnesota have found that putative class sizes of forty will support a finding

of numerosity, and much smaller classes have been certified by courts in the Eighth

Circuit.  See, e.g., Lockwood Motors, Inc. v. Gen. Motors, Corp., 162 F.R.D. 569, 574-

75 (D. Minn. 1995) (approving of classes of as few as forty members); Ark. Educ. Ass'n

v. Bd. of Educ. of Portland, Ark. Sch. Dist., 446 F.2d 763, 765-66 (8th Cir. 1971)

(approving class of twenty members); Horn v. Assoc. Wholesale Grocers, Inc., 555 F.2d

270, 275-76 (10th Cir. 1977) (approving class of 41-46 members).  The proposed class

here, estimated by Plaintiffs to include 250,000 structures, easily satisfies this minimal

threshold of numerosity.  Given the numerosity of class members, joinder is

impracticable.  Moreover, no party or class member has challenged numerosity.

Accordingly, this Court finds the class sufficiently numerous to satisfy Rule 23(a)(1).

Further, questions of law and fact are common to all members of this numerous

class, and the claims and defenses are typical of the class. The threshold for

commonality is low, requiring only that the legal question "linking the class members is

substantially related to the resolution of the litigation." DeBoer v. Mellon Mortg. Co.,

64 F.3d 1171, 1174 (8th Cir. 1995) (citations and internal quotations omitted).  "When

the claim arises out of the same legal or remedial theory, the presence of factual

variations is normally not sufficient to preclude class action treatment." Donaldson v.

Pillsbury Co., 554. F.2d 825, 831 (8th Cir. 1977).  Typicality exists when there are

"other members of the class who have the same or similar grievances as the plaintiff."
Id. at 830; see also E. Tex. Motor Freight Sys. Inc. v. Rodriguez, 431 U.S. 395, 403
(1977). Because commonality and typicality are similar, the Eighth Circuit requires
under typicality that the class representative demonstrate "that there are other members
of the class who have the same or similar grievances as the plaintiff." Paxton v. Union
Nat'l Bank, 688 F.2d 552, 562 (8th Cir. 1982) (quoting Donaldson, 554 F.2d at 830).

Here, common issues of law and fact exist, and the defenses and claims are
typical throughout the class. The claims contain common issues of law and fact, namely
whether the Uponor YBFs are defective. Additionally, each class member owns
property containing Uponor YBFs, each claims the fittings are defective, and each seeks
damages from the Uponor Defendants. All class members have the same interests and
therefore the class meets the commonality and typicality factors.

The final Rule 23(a) prerequisite is satisfied because the class counsel and
representatives are adequate. Adequacy of representation is satisfied where: "(1) the
class representatives have common interests with the members of the class, and (2) . . .
the class representatives will vigorously prosecute the interest of the class." Id. at 562-
63. The interests of the class are fairly and adequately protected by class counsel and
class representatives. Class counsel are experienced complex litigation firms with
significant resources and class action experience. Indeed, many of the firms have
significant experience litigating claims involving plumbing problems similar to those
presented here. Further, the class representatives' interests are identical to those of

absent class members, they seek the same form of relief, and they have demonstrated

their commitment through their diligent litigation of this matter.  Moreover, this Court

finds no inherent conflicts between the interests of the class representatives and the

absent class members.  "In order to satisfy the adequacy requirements, the Plaintiffs

must show 'that (1) the representatives and their attorneys are able and willing to

prosecute the action competently and vigorously, and (2) each representative's interests

are sufficiently similar to those of the class that it is unlikely that their goals and

viewpoints will diverge.'"  In re Hartford Sales Practices Litig., 192 F.R.D. 592, 604 (D.

Minn. 1999) (quoting In re Potash Antitrust Litig., 159 F.R.D 682, 692 (D. Minn.

1995)).

> **B.    Rule 23(b)(3)**

In addition to satisfying the Rule 23(a) prerequisites, the proposed class here also

satisfies Rule 23(b)(3) because common questions of law predominate and class action

is the superior method of adjudication.  When a class is being certified for settlement,

the Court need only analyze the predominance of common questions of law and the

superiority of class action for fairly and effectively resolving the controversy; it need not

examine Rule 23(b)(3)(A-D) manageability issues, because it will not be managing a

class action trial.  See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997); see

also In re Lutheran Bhd. Variable Ins. Prod. Co. Sales Practices Litig., No. 99-MDL-

1309, 2004 WL 2931352, at *8 (D. Minn. Dec. 16, 2004).  However, this means that

"other specifications of the Rule—those designed to protect absentees by blocking

unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context." Amchem, 521 U.S. at 620.

### 1. Predominance of Common Issues of Law and Fact

In determining whether common issues of law and fact predominate, the Court analyzes whether "proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 623. The Court is to "conduct a limited preliminary inquiry, looking behind the pleadings . . . to determine whether, given the factual setting of the case, if the plaintiffs' general allegations are true, common evidence could suffice to make out a prima facie case for the class." In re Zurn Pex Plumbing Prods. Liab. Litig., 267 F.R.D. 549, 560 (D. Minn. 2010) (quoting Blades v. Monsanto Co., 400 F.3d 562, 566 (8th Cir. 2005)).

The class representatives here, as well as the absent class members, seek to remedy a shared legal grievance concerning Uponor YBFs. Moreover, the common remedial theories — repair, replace, restore — were all addressed in the negotiations and in the Settlement. For settlement purposes, common questions of law predominate here.

### 2. Superiority of Class Action

Additionally, class action settlement is the superior method of resolving this dispute fairly and effectively. Settlement of the class action avoids duplicative litigation, saving both plaintiffs and defendants significant time and legal costs to adjudicate common legal and factual issues. The Settlement provides substantial

10

remedies to thousands of class members, reimbursing them for damages and repairs caused by their Uponor YBFs.  Class members have not expressed interest in individually prosecuting separate actions.  While this settlement is contingent on final resolution of In Re Wirsbo Non-F1807 Yellow Brass Litigation, Case No. 08-cv-1223, pending in the United States District Court for the District of Nevada ("Las Vegas Class Action") and a separate group of claims by California and Arizona homeowners ("CA/AZ Claims"), this Court is "not aware of any litigation, elsewhere, that would tend to undermine the certification requested by the Class . . . ."  Snell v. Allianz Life Ins. Co. of N. Am., No. 97-2784, 2000 WL 1336640, at *14 (D. Minn. Sept. 8, 2000).  For these reasons, a class action here is the fairest and most effective way of resolving thousands of potential individual controversies involving members of this class.

The class settlement here was reached after arms-length negotiation and years of discussion, discovery, motion practice, and trial preparation.  Accord Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1146 (8th Cir. 1999).  There is no suggestion of collusion between Class Counsel and Defendants in connection with the instant settlement. Additionally, as the Petrovic Court found, the mere fact that "some class members receive more than other class members in a settlement" does not of itself require subdivision of a class — "every settlement will involve different awards for various class members."  Id.  Here, the fact that class members receive the same remedies for past and future damage claims is an important factor which make class certification appropriate and class action the superior method of resolving this litigation.

11

**II.     Settlement Approval**

"The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context."  White v. Nat'l Football League, 822 F. Supp. 1389, 1416 (D. Minn. 1993).  Under Rule 23, a class action settlement agreement must be "fair, reasonable, and adequate" in order to be approved. Fed. R. Civ. P. 23(e)(2); Petrovic, 200 F.3d at 1148.  "To determine whether a settlement satisfies these standards, the court must consider:  the merits of the plaintiff's case, weighed against the terms of the settlement; the defendant's financial condition; the complexity and expense of further litigation; and the amount of opposition to the settlement."  In re Airline Ticket Comm'n Antitrust Litig., 953 F. Supp. 280, 282 (D. Minn. 1997) (quoting Van Horn v. Trickey, 840 F.2d 604, 607 (8th Cir. 1988)). Additionally, courts give "great weight" to and may "rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement."  Welsh v. Gardebring, 667 F. Supp. 1284, 1295 (D. Minn. 1987) (citations omitted). Additionally, the court "does not have the responsibility of trying the case or ruling on the merits of the matters resolved by the agreement . . . . Rather, the very purpose of compromise is to avoid the delay and expense of such a trial."  White, 822 F. Supp. at 1417 (internal quotations and citations omitted).  Settlement agreements are presumptively valid, Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1, 921 F.2d 1371, 1391 (8th Cir. 1990), particularly where "a settlement has been negotiated at arm's length, discovery is sufficient, the settlement proponents are

experienced in similar matters and there are few objectors." In re Ins. Brokerage

Antitrust Litig., 282 F.R.D. 92, 102 (D. N.J. 2012).

The present Settlement is presumptively valid, given the arm's length

negotiations supervised by the independent mediator, Ross Hart, Esq., the extensive

discovery conducted over several years of litigation, the substantial experience of both

plaintiff and defense attorneys, and the lack of objectors.  As previously stated, Plaintiffs

filed this case in January 2012, and the parties have been negotiating under Mediator

Ross Hart, Esq.'s supervision since February 2014.  Deutsch Decl. ¶ 19.  Indeed, the

parties were engaged in settlement negotiations for more than a year before the Court's

involvement.  Id. ¶¶ 19-21.  Prior to reaching a settlement, the parties conducted

extensive discovery and factual investigation, participated in substantial motion practice,

subpoenaed and deposed third parties, and engaged experts and analyzed the Uponor

YBFs.  See, e.g., Deutsch Decl. ¶¶ 14-15.   Furthermore, the parties are experienced

litigators, both in class action work generally and in plumbing products litigation

specifically.  See infra Section III(A)(1).  Finally, no objectors have surfaced out of at

least 250,000 potential class members.  The Settlement is therefore presumptively valid.

### A.    Merits of Case vs. Settlement Terms

Even if the Settlement were not presumptively valid, this Settlement satisfies the

fairness criteria laid out by the Eighth Circuit Court of Appeals.  The critical

consideration is the strength of plaintiffs' case on the merits versus the amount offered

in the Settlement.  See Petrovic, 200 F.3d at 1150.  In deciding on the merits, the Court

need not "go beyond an amalgam of delicate balancing, gross approximations, and rough justice." White, 822 F. Supp. at 1417 (internal quotation and citation omitted).

The Settlement terms here are generous, offering Plaintiffs the only conceivable remedies they could expect — replacement or repair of their systems, as well as restoration of property damaged by leaks.  Additional expenses, such as attorneys' fees, administration costs, and notice costs, are all shouldered by the Uponor Defendants and do not diminish class members' recovery.  See Settlement Agreement.  While the merits of Plaintiffs' claims here have not been finally determined, the Settlement terms reflect reasonable compromises and obviate the need for lengthy litigation which would inure primarily to attorneys' benefit.  The quality of settlement terms from class members' perspective, weighed against the capricious uncertainty, extensive time, and exorbitant costs inherent in complex trial litigation, merits approval of this Settlement.

**B.     The Uponor Defendants' Financial Condition**

No objectors argue that the Uponor Defendants' financial condition should have resulted in a better settlement agreement.  Moreover, class counsel considered the available insurance coverage, the effect of previous claims paid, and the coverage defenses raised by insurers in arriving at the current Settlement.  Deutsch Decl. ¶ 21. Therefore, consideration of the Uponor Defendants' financial condition also favors approval of the Settlement.

### C.      Complexity and Expense of Further Litigation

The complexity and expense of class action litigation is well-recognized.  Cf. Schmidt v. Fuller Brush Co., 527 F.2d 532, 535 (8th Cir. 1975) ("[r]ecognizing that class actions place an enormous burden of costs and expense upon the parties . . ."). Moreover, as has been noted in other class action cases, the various procedural and substantive defenses likely to be argued to the hilt by the Uponor Defendants, the expense of proving class members' claims, the certainty of resolution under this Settlement forecloses any subsequent appeals, and the fear that the "ultimate resolution of the action . . . could well extend into the distant future," all weigh in favor of the Settlement's approval.  Snell, 2000 WL 1336640, at *16.

### D.      Amount of Opposition to Settlement

There is no opposition to the Settlement.  Cf. Petrovic, 200 F.3d at 1152 (approving settlement where less than 4% of class objected); Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 118-19 (3d Cir. 1990) (holding that objections by 10% of a class "strongly favors settlement").  While not dispositive, "[t]he fact that only a handful of class members objected to the settlement similarly weighs in its favor."  DeBoer, 64 F.3d at 1178.

The Court has considered the interests of absent class members and the arguments of class representatives, counsel, and the Uponor Defendants, and finds this Settlement fair, reasonable, and adequate as required by Rule 23.

### III.    Attorneys' Fees

With the final approval of the class certification and the Settlement, the Court

now must consider the propriety of the service awards for class representatives, as well

as attorneys' fees and costs.  In the Eighth Circuit, courts routinely approve service

award payments to class representatives for their assistance to a plaintiff class.  See, e.g.,

In re Xcel Energy, Inc., Sec., Derivative, & "ERISA" Litig., 364 F. Supp. 2d 980, 1000

(D. Minn. 2005) (awarding $100,000 for eight lead plaintiffs in securities class action);

Austin v. Metro. Council, Civ. No. 11-3621 [Docket No. 27] ("Order Granting Final

Approval") at ¶ 48 (D. Minn. Mar. 27, 2012) (awarding $20,000 for each named

plaintiff in a discrimination case class action).  In this case, the class representatives

have spent considerable effort in gathering information, opening up their properties for

inspection and investigation, gathering documents, and assisting class counsel. The

Settlement occurred before depositions were conducted of class representatives, and

before they needed to testify at trial.  Given the extent of the class representatives'

performance and assistance in procuring the Settlement, the Court finds that the

proposed service award of $5,000 per home to the Class Representatives is appropriate.

Regarding attorneys' fees and costs, no class member has objected to the amount

sought by class counsel.  Deutsch Decl. ¶ 11.  "Courts have recognized that the risk of

receiving little or no recovery is a major factor in awarding attorney fees."  In re Xcel

Energy, 364 F. Supp. 2d at 994.  Moreover, when a defendant agrees to pay fees and

costs separately from the benefit for a class, the district court "may rely on summaries

submitted by the attorneys and need not review actual billing records." In re Rite Aid

Corp. Sec. Litig., 396 F.3d 294, 306-07 (3d Cir. 2005). Where, as here, class counsel

has expended considerable time and effort in procuring a settlement, has independently

negotiated a maximum fee amount at arm's length with defendants, and the fee amount

does not impact or diminish the total settlement received by class members, the

attorneys' fees requested are appropriate. Cf. Snell, 2000 WL 1336640, at *19; DeBoer,

64 F.3d at 1178 (affirming attorneys' fee award where most of the fee was paid by

defendant and not from the class recovery). Additionally, the significant risks incurred

by class counsel since 2012 with no promise of recovery or payment, the extensive

experience of and substantial work performed by class counsel, and class counsel's

commitment to oversee the claim process and future work on this litigation (with a

Claims Administration Period that will last 5 years, running from the Effective Date) all

factor into this Court's decision that the attorneys' fees agreed upon by all parties here

are appropriate. *See* Settlement Agreement ¶ 126. Moreover, the costs class counsel

requests to be reimbursed are reasonable and appropriate. Class counsel took steps to

coordinate efforts and avoid duplication (Deutsch Decl. ¶ 10), and the amount requested

— $1,080,304.61 — is reasonable for a three-year litigation of this magnitude. Id. ¶ 7.

The Court therefore finds the total attorneys' fees and costs of $7.5 million reasonable

and appropriate.

**Conclusion**

Based upon the foregoing, and all the files, records, and proceedings herein, **IT**

**IS HEREBY ORDERED:**

1.     The Motion for Final Approval of Class Action Settlement and Award for

Attorney Fees and Costs and Payment of Service Awards  is GRANTED.

a.     Plaintiffs' Counsel are awarded attorneys' fees and costs in the

amount of $7.5 million.

b.     Class representatives Tim George, Galen and Leslie Satterlee, Gail

Henrichsen, Dave and Holly Marcus[2], Kelly Babb, Gary and Elsa

Overstreet, Roger Sweidan and Susan Loomis, Rodolfo and Maria

Celis, and Curtis and Tina Smith are awarded service awards of

$5,000 per home.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


_____s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  September 9, 2015

---

[2] Dave and Holly Marcus own two homes and therefore are awarded a total service award of $10,000.00 ($5,000.00 per home).

18