UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| TIM GEORGE, CHARLES and JAMIE GIBBS; WILLIAM and CORIE CONNELLY; GALEN and LESLIE SATTERLEE; GAIL HENRICHSEN; DUSTIN and MARTHA BARNETT; DAVE and HOLLY MARCUS; KELLY BABB and GARY AND ELSA OVERSTREET, individually and on behalf of those similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>UPONOR CORPORATION;UPONOR GROUP; UPONOR, INC.; WIRSBO COMPANY; and UPONOR WIRSBO COMPANY,<br><br>    Defendants. | Civ. Case No. 12-249 (ADM/JJK) |

**ORDER GRANTING UNOPPOSED MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT ON BEHALF OF UPONOR AND MATERIALLY CONTRIBUTING ENTITIES**

On September 8, 2015, the undersigned United States District Judge heard oral argument on the Unopposed Motion for Determination of Good Faith Settlement [Docket No. 222] on behalf of UPONOR, INC., f/k/a UPONOR WIRSBO, INC., f/k/a WIRSBO COMPANY and UPONOR NORTH AMERICA, INC. (collectively "UPONOR"), and the entities identified as Materially Contributing Entities ("MCEs") in the Addendum attached as Exhibit "B" to the Settlement Agreement and Release prepared in connection with the proposed class action settlement in this matter. After review of pleadings and briefing, and

having heard the arguments of counsel for good cause shown, it is hereby ORDERED that for the reasons set forth below: (1) the Motion for Determination of Good Faith Settlement is GRANTED; (2) the Court finds that settlement entered between the class members, UPONOR and the MCEs is just, fair, and reasonable and entered into in good faith; (3) any and all present or future third-party claims or cross-claims against the UPONOR entities and/or the MCEs for contribution and/or equitable or implied indemnity (whether statutory or common law) are hereby and hereafter barred; and (4) the material terms of the class settlement are entered into the Court minutes in the form of this Order; all as follows:

## I. SCOPE OF THE LITIGATION AND SETTLEMENT

1. The settlement achieved in this matter occurs in the context of a complex class action lawsuit involving allegations concerning high-zinc brass plumbing system fittings, and other components made from such material, allegedly designed and/or sold by UPONOR which were installed in properties located throughout the United States. It is alleged that these high-zinc brass plumbing fittings, when exposed to water, will experience a phenomenon known as dezincification whereby the zinc within the fittings will separate from the copper. The claims set forth in the instant litigation are directed against UPONOR and 39 entities who are making significant monetary contributions to the settlement (referred to as "Materially Contributing Entities"). Such allegations concerning dezincification of high-zinc brass plumbing fittings designed and/or sold by UPONOR are also set forth in other litigation either currently, or previously pending in a number of states including Washington, Oregon, California, Arizona, Colorado, Hawaii, Texas, Oklahoma, Pennsylvania and Illinois.

UPONOR has been named as a defendant in matters venued in each of the above referenced jurisdictions. While the Materially Contributing Entities (hereinafter "MCEs") have not all been named as defendants in each of the jurisdictions listed above, several of them have been named as defendants in certain of the jurisdictions listed and the potential exists for various of the MCEs to be named in the future as defendants in dezincification related litigation involving high-zinc content brass fittings designed and/or sold by UPONOR.

2. The present litigation dates back to January 31, 2012 when the present suit was originally filed against UPONOR. Since that January 31, 2012 filing, Plaintiffs, UPONOR and many of the MCEs have engaged in difficult, protracted litigation in various forums that has involved extensive motion practice, including multiple petitions to, and two oral arguments before the Ninth Circuit Court of Appeals, two oral arguments before the United States Judicial Panel on Multidistrict Litigation, and an oral argument before the Nevada Supreme Court. Plaintiffs, UPONOR and various of the MCEs have also engaged in extensive discovery including fact related discovery, expert witness discovery, and have conducted extensive scientific testing/analyses of high-zinc brass fittings. Additionally, hundreds of thousands of pages of documents have been requested and produced during the course of the high-zinc brass litigation and dozens of depositions have been conducted.

3. Substantial motion practice has taken place in this litigation both related to the claims directed against UPONOR and with respect to discovery requested from UPONOR. Substantial and protracted disputes related to the discovery requested from UPONOR have occurred in this case and many hours have been devoted by counsel to both meet and confer

conferences related to the discovery directed to UPONOR, as well as motion practice based on impasses reached by the parties concerning those discovery disputes.

4. In February 2014, settlement negotiations under the supervision of an independent, retained, mediator began among Plaintiffs, UPONOR, the MCEs and the insurance carriers for the non-plaintiff entities. These were difficult, protracted, arm's-length settlement negotiations which ultimately resulted in agreement in principle to a settlement of the instant class suit in July 2014. Negotiations regarding the actual language of the Settlement Agreement and Release, as well as the accompanying Addendum which memorializes the agreement between UPONOR and MCEs, continued until April 2015.

5. Pursuant to the structure of the settlement, Plaintiffs and UPONOR will enter into a Settlement Agreement and Release which sets forth the terms of the settlement of the claims encompassed within this class action. While the Settlement Agreement contains terms that provide rights and benefits to the MCEs, the MCEs are not signatories to that Agreement. Rather, the formal terms of the MCEs' relationship to the settlement are set forth in the "Addendum" which is attached as Exhibit "B" to the Settlement Agreement. The signatories to the Addendum are UPONOR and the MCEs. In total, 39 MCEs are contributing approximately $18 million of the settlement funding, as reflected in the Addendum. UPONOR is providing a combination of monetary and non-monetary contributions toward this class settlement. UPONOR's non-monetary contributions include extended/modified warranties to class members, which entail open-ended risks with respect to future claims brought by class members pursuant to such warranties, as well as agreements

regarding assumption of certain potential workmanship issues as they relate to dezincification.  UPONOR is also making substantial monetary contributions to the class settlement.  As a result of their participation in the settlement, UPONOR and the MCEs will receive releases of claims relating to dezincification of the high-zinc brass fittings and other related components designed and/or sold by UPONOR from the class members who participate in the settlement.

## II.  TERMS OF THE SETTLEMENT

6. The relevant terms of the settlement, for purposes of this Motion, are summarized as follows:

   a. All class members will receive from UPONOR a 2 year enhanced warranty for property damage claims;

   b. All class members will receive from UPONOR a minimum of 2 additional years of warranty coverage from the Effective Date, for property damage claims;

   c. All class members will receive from UPONOR an enhanced warranty for low flow and fitting replacement failures/claims of either 5 or 25 years;

   d. These extended warranties are partially transferable;

   e. Uponor will pay for all notice and administration costs in connection with the settlement which will be well in excess of $1 million;

   f. For past property damage claims class members will have 6 months from the approval date to report such claims and all future claims are to be reported within 6 months of an occurrence;

   g. UPONOR agrees to maintain for 5 years the financial ability to pay $15 million of claims;

h. A Settlement Claims Fund will be established and will be funded by UPONOR in the amount of $3 million and be replenished by UPONOR after dropping to $2 million;

i. The 39 MCEs will each make a monetary contribution toward the settlement fund as set forth in the Addendum attached as Exhibit "B" to the Settlement Agreement and Release. The total aggregate contribution to the Settlement Claims Fund from the MCEs is approximately $18 million;

j. UPONOR has agreed that if a claim submitted by a Settlement Class Member qualifies as an eligible claim as provided for in the Settlement Agreement, then UPONOR will not differentiate, for purposes of the remedies and benefits provided to Settlement Class Members, between dezincification due to workmanship and dezincification arising from other causes;

k. A release of claims will be given to UPONOR and the MCEs by the class members relating to claims concerning dezincification of high-zinc content brass plumbing fittings designed and/or sold by UPONOR;

l. UPONOR and the MCEs' relationship in connection with the yellow brass fitting claims being settled will be governed by the document entitled "ADDENDUM TO UPONOR YELLOW BRASS FITTING SETTLEMENT AGREEMENTS & RELEASES OF CLAIMS" and nothing in the order entered in connection with the Unopposed Motion for Determination of Good Faith Settlement on Behalf of Uponor and the Materially Contributing Entities in the instant class action shall supersede, alter, modify or change the terms and provisions of the ADDENDUM TO UPONOR YELLOW BRASS FITTING SETTLEMENT AGREEMENTS & RELEASES OF CLAIMS;

m. Upon the Effective Date, the instant class action, and each of the actions consolidated in or coordinated with it, including the related cases identified earlier in this Motion, and all claims and allegations as identified in the Settlement Agreement will be dismissed as to UPONOR and the MCEs on their merits and with prejudice;

n. Plaintiffs do not oppose the entry of the instant Motion for Determination of Good Faith Settlement, and Uponor and the MCEs have agreed to the relief requested in the instant Motion; and

   o. UPONOR will maintain the financial ability to pay $15 million in qualifying claims, an initial funding deposit of $3 million for the Settlement Fund and will replenish that fund upon the fund's dropping to $2 million. UPONOR's exposure for these claims will be up to $21 million.

## III.  LEGAL ANALYSIS

### A.  The Settlement Qualifies As Having Been Made in Good Faith.

7.  It has previously been held by this Court, in the very factually similar case of <u>In re Zurn Pex Plumbing Products Liability Litigation</u>, 2013 U.S. Dist. LEXIS 26557 (D. Minn. 2013) that a similar settlement would be deemed to meet the requirements of a good faith settlement, including settlements in the context of states that have good faith settlement statutes.  On a national basis there are "three basic standards for determining if a settlement is made in good faith".  <u>See</u> <u>Troyer v. Adams</u>, 77 P.3d 83 (Haw. 2003).  These three standards are: a) the six factor "proportionate liability" standard set forth by the California Supreme Court in <u>Tech-Bilt, Inc. v. Woodward-Clyde & Associates</u>, 698 P.2d 159 (Cal. 1985); b) the "non-collusive" or "non-tortious conduct standard"; and c) the "totality of the circumstances" approach.

### i.    Under The California Supreme Court's Standard in *Tech-Bilt*, the Settlement Qualifies as a Good Faith Settlement.

8.   In Tech-Bilt, the California Supreme Court noted that there were several factors a court should consider in determining whether the settlement under consideration was entered into in good faith.  These factors include: 1) a rough approximation of the plaintiffs' total recovery and the settlor's proportionate liability; 2) the amount paid in settlement; 3) the allocation of the settlement proceeds among plaintiffs; 4) a recognition that a settlor should pay less in settlement than he would if found liable after a trial; 5) the financial condition/insurance available to a defendant; and 6) the existence of any collusion, fraud or tortious conduct related to the settlement. See Tech-Bilt, 698 P.2d at 166–67.

9.   The present settlement qualifies for a good faith finding under the Tech-Bilt factors.  First, making the "rough approximation" of the class members' recovery and the settling parties' proportionate liability reveals that at a minimum the recovery equals or exceeds the liability exposure of UPONOR and the MCEs. Each class member will receive benefits under the terms of the proposed settlement.  These benefits include warranty extensions as well as monetary compensation in various circumstances. Weighed against those benefits is the uncertainty of the class members prevailing after protracted and expensive litigation where putative class member may recover nothing.  Thus the first Tech-Bilt factor weighs in favor of the settlement being made in good faith.

10.   The second Tech-Bilt factor, concerning the amount paid in settlement, also supports a good faith finding.  The benefits to the class members go beyond simply a

monetary sum. The warranty terms of the settlement present a more valuable component of the settlement than a one-time cash payment. The amount of the settlement includes enhanced warranty terms, providing benefits to all class members as well as monetary benefits in the form of cash payments relating to property damage claims and repairs/replacements for low flow claims. These benefits extend into the future following final approval of the settlement. The amount of these benefits can be up to $60,000 per residential unit in some cases and up to $100,000 per building in other cases. Additionally, the MCEs are making significant monetary contributions toward the settlement, which contributions total in the aggregate approximately $18 million. These amounts were reached after extensive negotiations between Plaintiffs, UPONOR and the MCEs supervised by an independent mediator and the consideration of the totality of the circumstances, including that the MCEs and UPONOR deny any liability whatsoever to the class members and contend that the class members are not entitled to any relief whatsoever for their alleged claims.

11. The third Tech-Bilt factor concerns the allocation of the settlement among the plaintiffs. This factor, given the terms of the proposed settlement, also weighs in favor of a good faith finding. The settlement is specifically crafted to cover residential units and non-residential units as well as common areas. While the benefits to class members differ somewhat between the categories of class members, the benefits for class members within the categories are the same. A homeowner in California will receive the same benefits as a homeowner in Oklahoma. The terms of the settlement set forth specific amounts that class

members can receive as benefits under the settlement and the settlement agreement spells out the rights and benefits afforded to class members.  The proposed settlement reveals a minimum threshold of benefits to all class members with increasing benefits for class member depending upon the nature and extent of their claim.  The settlement provides guidelines for the claims administrator in administering claims of class members so there is no risk of disparate treatment of class members.  The sums to be paid for claims will be paid from the Settlement Claims Fund (funded by UPONOR and the MCEs) directly to the class members in their individual capacities with their claims being resolved.  UPONOR has no input or participation in how the class members will utilize the funds they receive in connection with a claim.  This third factor weighs in favor of the good faith of the settlement.

12.     The fourth Tech-Bilt factor concerns the recognition that a settlor should pay less in settlement than he would if found liable after a trial.  UPONOR and the MCEs have vigorously defended these dezincification claims in various venues throughout the country.  The ultimate liability of UPONOR and the MCEs with respect to these dezincification claims was uncertain.  A settlement has been crafted that provides all class members quantifiable benefits extending into the future. The fourth Tech-Bilt factor supporting a good faith finding has also been met in this case.

13.     The fifth Tech-Bilt factor concerns the financial condition/insurance available to a defendant.  Substantial defenses have been raised to insurance coverage for these claims by insurers.  An agreement has been reached between UPONOR and its insurers, and between some MCEs and certain (but not all) of their insurers, securing their participation

in the global settlement of these cases. The settlement of the dezincification claims at issue is a global settlement involving the instant class action as well as a class action pending in Las Vegas, Nevada and a group of 35 claims venued in California and Arizona. The funding for all of those settlements comes from the collective contributions of the MCEs, UPONOR and from some (but not all) of the insurers of some of the MCEs as well as the insurers of UPONOR. Furthermore, the settlement agreement specifically provides that UPONOR will maintain the financial ability to pay $15 million in qualified claims for five years. UPONOR is making a significant contribution to this settlement in multiple ways including: a) the sole exposure for claims pursuant to the extended warranty; b) payment of all notice and administrative costs; and c) maintenance of the settlement claims fund agreed to by the parties. The MCEs are making a significant contribution to funding the above relief through their individual monetary contributions to the settlement. Based upon the foregoing, this settlement meets the fifth Tech-Bilt factor supporting a good faith finding.

14. The sixth, and final, Tech-Bilt factor concerns the presence of any collusion, fraud or tortious conduct related to the settlement. This settlement was reached through lengthy, highly contentious and extensive negotiations presided over by an independent, neutral mediator. A concerted effort was made to make the settlement as inclusive as possible with respect to as many developers/builders, plumbers and supplier/distributors. There is no evidence of any collusion, fraud or tortious conduct involved in the settlement of this matter between Plaintiffs, UPONOR and the MCEs. All parties had the opportunity to negotiate in good faith and review/evaluate the nature of the allegations being raised

11

against UPONOR and the MCEs as well as the terms of the settlement. The sixth and final Tech-Bilt factor supports a good faith finding related to this settlement.

### ii. Under The "Non-Collusive" or "Non-Tortious Conduct Standard" the Settlement Qualifies as a Good Faith Settlement.

15. Various jurisdictions have adopted the "non-collusive" or "non-tortious conduct standard" for assessing the good faith of a settlement. The "non-collusive" or "non-tortious conduct standard" provides that a settlement is "deemed to be in good faith absent collusion, fraud, dishonesty, or other wrongful conduct". See Troyer, 77 P.3d at 106 (citing precedent from Alaska, Colorado, Massachusetts and New York).

16. There is no evidence, or even a hint, of any "collusion, fraud, dishonesty, or other wrongful conduct" in connection with this settlement. The negotiations culminating in this proposed settlement were lengthy, contentious, and supervised by an independent mediator. These negotiations proceeded for many months and were followed by an even longer period of contentious negotiations over the actual language of the settlement agreement and the Addendum attached thereto. The amounts to be paid by the MCEs and UPONOR, as well as their insurers, were only determined after extensive discussions and further negotiations with a completely separate group of attorneys representing insurance carriers for UPONOR and the MCEs. Plaintiffs' counsel was involved in arms-length negotiations in this regard also under the supervision of the mediator. Pursuant to the "non-collusive" or "non-tortious conduct standard", this class settlement was reached in good faith.

### iii. Under The "Totality of the Circumstances" Standard, the Settlement Qualifies as a Good Faith Settlement.

17. Certain jurisdictions have adopted the "totality of the circumstances" standard for evaluating whether a settlement was entered into in good faith. Under this standard the determination of the good faith of a settlement is left to the discretion of the court, based on all relevant facts available at the time of the settlement. See Troyer, 77 P.3d at 106.

18. A totality of the circumstances analysis supports a finding of good faith relating to this settlement. The settlement comes in the context of a putative class action that has been vigorously contested in connection with both the viability of the claims being made and in the discovery process. The Eighth Circuit Court of Appeals has indicated that one of the factors to consider in connection with the settlement of a complex class action is the "time interval before any individual class member would be afforded redress" absent the settlement. See In re Wireless Tel. Fed. Cost Recovery Fees Litig., 396 F.3d 922, 933 (8th Cir. 2005) (noting that the District Court had properly considered the fact that "barring settlement, this case would 'likely drag on for years, require the expenditure of millions of dollars, all the while class members would receive nothing'").

19. The present case mirrors the situation in the In re Wireless Telephone litigation. The totality of the circumstances in this litigation reveals a willingness of the MCEs and UPONOR to continue litigating these dezincification claims for years absent this settlement, leaving the class members with no remedy and the potential, given the uncertainty of the outcome of this case, of receiving no benefits whatsoever. The settlement, on the contrary, provides the class members an immediate guarantee of definite benefits that apply to all class

13

members. In light of the foregoing, this settlement qualifies under the totality of the circumstances standard as a good faith settlement.

20. For the foregoing reasons, in accordance with the applicable national and well recognized standards for good faith findings, including the California "Tech-Bilt factors" standard, the "non-collusive" and "non-tortious" standard, and the "totality of the circumstances" standard, this settlement between the class members, UPONOR and the MCEs is just, fair, and reasonable and entered into in good faith.

21. As a result of the settlement before the Court being entered into in good faith, any and all present or future third-party claims or cross-claims against the UPONOR entities and/or the MCEs for contribution and/or equitable or implied indemnity are hereby and hereafter barred.

22. The above material terms of the settlement are shall be entered into the Court minutes in the form of this Order.

Accordingly, IT IS HEREBY ORDERED that:

1. The Motion for Determination of Good Faith Settlement [Docket No. 222] on behalf of UPONOR, INC., f/k/a UPONOR WIRSBO, INC., f/k/a WIRSBO COMPANY and UPONOR NORTH AMERICA, INC. and the Materially Contributing Entities is **GRANTED**;

2. The Court finds that settlement entered between the class members, UPONOR and the MCEs is just, fair, and reasonable and entered into in good faith;

3. Any and all present or future third-party claims or cross-claims against the UPONOR entities and/or the MCEs for contribution and/or equitable or implied indemnity (whether statutory or common law) are hereby and hereafter barred; and

4. The material terms of the class settlement are entered into the Court minutes in the form of this Order Unopposed Motion for Determination of Good Faith Settlement.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: September 9, 2015.